```
 1              UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF VIRGINIA
 2                    ROANOKE DIVISION

 3   ****************************************************************

 4   MATTHEW SNIDER,           CIVIL NO.:  7:18cv233
                               AUGUST 15, 2018
 5                             SETTLEMENT CONFERENCE (TELEPHONIC)
             Plaintiff,        ROANOKE, VA
 6   vs.

 7   MACTANZ, INC.,            Before:
                               HONORABLE ELIZABETH K. DILLON
 8                             UNITED STATES DISTRICT JUDGE
             Defendant.        WESTERN DISTRICT OF VIRGINIA
 9
     ****************************************************************
10
     APPEARANCES:
11

12   For the Plaintiff:

13   DREW NICHOLAS HERRMANN, ESQUIRE
     Herrmann Law, PLLC
14   801 Cherry St., Suite 2365
     Fort Worth, TX 76102
15   817-479-9229
     drew@herrmannlaw.com
16

17   WILLIAM CLARK TUCKER, ESQUIRE
     Tucker Law Firm, PLC
18   690 Berkmar Circle
     Charlottesville, VA 22901
19   434-978-0100
     bill.tucker@tuckerlawplc.com
20

21

22
     Court Reporter:   JoRita B. Meyer, RPR, RMR, CRR, FOCR
23                     210 Franklin Road, S.W., Room 540
                       Roanoke, Virginia  24011
24                     540.857.5100, Ext. 5311
             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25   TRANSCRIPT PRODUCED BY COMPUTER.
```

1 APPEARANCES CONTINUED:

2 For the Defendant:

3 TODD A. LEESON, ESQUIRE
KELSEY MARTIN, ESQUIRE
4 Gentry Locke Rakes & Moore
P.O. Box 40013
5 Roanoke, VA 24022-0013
540-983-9437
6 leeson@gentrylocke.com

7 ///

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (Proceedings commenced, 1:03 p.m.)

2         THE COURT: Good afternoon. This is Elizabeth
3 Dillon. I have Christine D'Elicio, my law clerk. We have a
4 deputy clerk, Brittany Weeks, here. And we have a court
5 reporter.

6         Mr. Herrmann, are you on the line for the plaintiff?

7         MR. HERRMANN: Good morning, Your Honor. Yes, I am.

8         THE COURT: Good morning -- good afternoon.

9         MR. HERRMANN: Good afternoon, rather.

10        THE COURT: Yeah.

11        And Mr. Leeson, are you on the line for defendant?

12        MR. LEESON: Yes, Judge Dillon. And I also have
13 Kelsey Martin, an associate with Gentry Locke, in here as
14 well.

15        THE COURT: Very well. Welcome to both of you. And
16 I'm going to ask Ms. Weeks to call the case.

17        THE CLERK: *Matthew Snider versus MACTANZ, Inc.,*
18 Civil Action Number 7:18-CV-233.

19        THE COURT: The purpose of our hearing today is
20 approval of a settlement in this Fair Labor Standards Act
21 case. So first I would like either Mr. Herrmann or Mr.
22 Leeson or Ms. Martin to briefly summarize the nature of the
23 case for the record.

24        MR. LEESON: I'm happy to do so, Your Honor, if
25 that's okay with you, Drew. May I proceed?

1     MR. HERRMANN: Yes.

2     MR. LEESON: So Mr. Snider filed his complaint on
3  May 23rd as a proposed FLSA collective action. MACTANZ filed
4  an answer denying the primary allegations and asserting
5  various defenses.

6     The parties, through their counsel, have engaged in
7  substantive discussions and negotiations regarding this case
8  for the last two months or so.

9     On July 26, the parties entered into a negotiated
10 settlement agreement.

11    On July 27th, the counsel jointly filed a
12 stipulation of dismissal and joint motion to enter final
13 order, which is Docket 15. And we did have a status
14 conference with the Court on August 3 to apprize Your Honor
15 of the status.

16    As part of the stipulation of dismissal, the
17 plaintiff has withdrawn his motion seeking conditional
18 certification, and no other person has opted in as a party
19 plaintiff.

20    So we are before you this afternoon on the record
21 seeking your approval of a final order to dismiss the case
22 with prejudice. And I'd be glad to continue with further
23 facts and circumstances, but that summarizes the process that
24 brings us before Your Honor this afternoon.

25    THE COURT: Very well. And first I want to check,

1  Mr. Leeson. I know we've got Mr. Herrmann and Mr. Leeson and
2  Ms. Martin on the phone. Is there anyone else on the line?
3              MR. TUCKER: Yes, Your Honor. This is Bill Tucker.
4              THE COURT: Oh, very well.
5              MR. TUCKER: And sorry I didn't speak up. I just
6  didn't want to interrupt.
7              THE COURT: All right. Well, Miriam was kind enough
8  to tell me there was another number showing up, so I wanted
9  to make sure I had everyone recognized. Thank you,
10 Mr. Tucker.
11             MR. TUCKER: Thank you, Your Honor.
12             THE COURT: All right. Then if you would -- either
13 Mr. Herrmann, Mr. Leeson, Mr. Tucker, or Ms. Martin, whoever
14 would like, if you would like to go over the factors, to the
15 extent you deem necessary, so the Court can evaluate the
16 fairness and reasonableness of the settlement.
17             MR. LEESON: Yes, Your Honor. We -- just -- well, a
18 couple of contextual matters. Obviously, the prevailing view
19 in the Fourth Circuit is that the Court must be satisfied
20 that the settlement is a fair and reasonable resolution of a
21 bona fide dispute. And in our prior filings we've cited a
22 couple of cases to that effect, including the *Darrah* case
23 that Judge Moon handled and settled last fall.
24             The -- to get to where we are with the final result
25 requires a little bit of additional context that brings us to

1 the settlement.

2 THE COURT: Go ahead.

3 MR. LEESON: This case involves a restaurant. And
4 as Your Honor knows, the law, the Fair Labor Standards Act,
5 allows restaurants to take what's considered a tip credit,
6 where they would pay a server $2.13 an hour as opposed to the
7 minimum wage or higher, the minimum wage being $7.25 an hour,
8 under the theory that they will make well in advance of the
9 additional $5.12 an hour in tips.

10 The law also allows restaurants to have servers and
11 other employees participate in what's called a tip pool. So
12 that includes traditionally people like bartenders and food
13 runners.

14 The primary allegation in this complaint is that
15 MACTANZ improperly included a dishwasher in the tip pool, and
16 the allegation is that MACTANZ required servers to contribute
17 1 percent of their gross sales per shift that would go to the
18 dishwasher.

19 In this case, the plaintiff, Matt Snider, worked as
20 a server for about eight months. He was working roughly 35
21 to 40 hours a week. During that time, he earned over $13,000
22 in tips. So if you do the math, he earned, you know, well
23 over the minimum wage.

24 He -- we have provided information to Mr. Herrmann
25 in the context of, you know, some informal discovery. And

1   our records, MACTANZ's records, show that Mr. Snider had
2   about $110,000 in sales.  So if MACTANZ is wrong about the
3   tips to the dishwasher, we submit that the out-of-pocket loss
4   to Mr. Snider is $1,100, which is 1 percent of 110,000.
5            The challenge for MACTANZ is the legal costs to
6   litigate this case, especially in potential collective
7   action, as well as the potential remedy for a violation of
8   the tip credit is monumental.
9            In this case, MACTANZ's records -- and I'll
10  illustrate it this way as it relates to Mr. Snider.
11  MACTANZ's records show that Mr. Snider worked approximately
12  1,450 hours as a server.  And under the current remedies for
13  a violation, you would take those hours, you would take the
14  difference in the -- from the tip credit and the minimum
15  wage -- that's $5.12 an hour -- and so he would get that for
16  every hour he worked as a server, plus the return of the tip
17  pool money contributed.
18           So in this case, that's roughly $8,500.  There is
19  the possibility for liquidated damages, which of course means
20  you would double that.  Plus you've got the possibility --
21  well, it's more than possibility.  Under the law, you would
22  also -- if the plaintiff prevailed, there would be fees and
23  costs.
24           THE COURT:  Did we gain somebody or lose somebody?
25  Well, let's go through it.

1           MS. FRAZIER: We lost Mr. Tucker.

2           THE COURT: Mr. Tucker apparently fell off the line.
3  We'll go ahead. He might rejoin us. Go ahead.

4           MR. LEESON: Okay. MACTANZ is a single, stand-alone
5  restaurant, did not have any insurance for an FLSA case,
6  which is common.

7           I will say and I do -- because we're on the public
8  record, I want to briefly note that, unlike many of the tip
9  credit or FLSA cases that we read about or that are common,
10 there's no evidence here that management did anything to
11 enrich the owners or management at employees' expenses. You
12 know, it's not a case of failing to pay overtime or requiring
13 that tips go to managers, anything along those lines.

14          You know, MACTANZ's position is that washing dishes
15 in a busy restaurant is a critical task necessary to the
16 overall team operations. There's nothing nefarious about
17 what MACTANZ is alleged to have done here in asking that
18 their servers contribute 1 percent of sales to dishwashers.
19 And if this thing, if this case were to -- was not settled,
20 and if the Court does not dismiss it, you know, we will
21 strongly oppose not only the merits but any demand for
22 liquidated damages as well.

23          But the reality is, and as we discussed briefly
24 during our status conference, MACTANZ cannot afford to defend
25 itself against a collective action lawsuit. If this case

1  proceeds, MACTANZ will be forced to file for bankruptcy and
2  everyone will lose.
3  So Mr. Snider is really in a unique bargaining
4  position. As noted, I've been working with Mr. -- with both
5  plaintiff counsel in this case, especially -- you know, Mr.
6  Herrmann, this is what he does. He knows what he's doing.
7  He's been fair but he's been tough. And I mean that in a
8  complimentary fashion. One of the things that he has done in
9  his discussions with me is, even though we have the records
10 that show he's worked 1,450 hours as a server, it is true
11 that he did work some additional hours as -- doing training
12 and as a food runner, but the plaintiff's counsel posits that
13 the amount of hours that should be compensated is 1,700 hours
14 and not 1,450 hours.
15 We have entered into a settlement agreement. It is
16 standard in the sense that it includes a release of all
17 claims. There's no admission of any wrongdoing. It is
18 contingent upon the Court's approval.
19 I will represent to the Court that there is no
20 confidentiality in that, in that agreement; opposing counsel
21 was adamant on that.
22 And what MACTANZ has agreed to do is provide full
23 monetary relief to Mr. Snider, to include the maximum amount
24 he could recover, including if he were to prevail and be
25 awarded liquidated damages. It's our strong contention that

1    this was a -- would be a tremendous windfall to Mr. Snider.
2    The parties -- MACTANZ would agree to pay within ten days
3    after court dismissal, so it would not be, you know, dragged
4    out.  And I submit that this would be an optimal result for
5    the plaintiff, given the uncertainties and risks in
6    litigation.
7            One just quick example, and I'm not going to belabor
8    this on the public record, but there was a material
9    misrepresentation in the original employment application.
10   Had he answered truthfully, MACTANZ likely would not have
11   hired him.  You know, there are issues -- there could be
12   issues about that if this case --
13           MR. HERRMANN:  I'm going to object.  I'm going to
14   object to that as a side bar having nothing to do with the
15   approval of the settlement.
16           MR. LEESON:  My only point is there are
17   uncertainties in litigation if this thing were to go forward,
18   and risks.  So I will move on.
19           THE COURT:  I'm going to -- I'm going to allow --
20   allow the statement.  I'm not going to strike it, because the
21   Court -- the Court considers the strength of the plaintiff's
22   case in whether or not to approve the settlement.
23           So go ahead.  You can move on, Mr. Leeson.
24           MR. LEESON:  Thank you, Your Honor.
25           In addition, MACTANZ will also agree to pay all of

11

Snider v. MACTANZ 7:18cv233 8/15/18

1 the plaintiff's attorney's fees and costs. I acknowledge
2 that counsel has spent a fair amount of time drafting a
3 comprehensive complaint, a motion, and we have spent a lot of
4 time going back and forth in negotiations and discussions and
5 trading information. And so the --
6         THE COURT: Mr. Leeson, that's separate and apart
7 from the -- attorneys' fees and costs are separate and apart
8 from the amount to the plaintiff; is that correct?
9         MR. LEESON: Yes. Yes. Yes, Your Honor, that's
10 correct. That's in addition --
11         THE COURT: All right.
12         MR. LEESON: -- to the full relief that I just
13 described.
14         THE COURT: Very well.
15         MR. LEESON: So it's our judgment that -- the case
16 that seems to be quoted within this circuit oftentimes is the
17 *Lynn's Food Stores*. That's the one that Judge Moon and
18 others have relied on.
19         If you look through those factors, I think they
20 would all support your approving this settlement as a fair
21 and reasonable resolution. There's certainly no fraud or
22 collusion. The counsel in this case are experienced and, you
23 know, regularly handle these types of cases.
24         I have made representations to the Court that the
25 amount of the settlement that would go to Mr. Snider and to

1    his counsel are substantial. So we agree -- and I think I
2    can use that term, "we," given the stipulation that was
3    filed -- agree that it's best to resolve this case now,
4    compared to the cost, the length, the risk and uncertainties
5    of additional litigation.
6         So we would ask that you enter a final order
7    dismissing this case with prejudice.
8         THE COURT: All right. Have we lost anybody or
9    gained anybody on the call? Do we still have Mr. Herrmann?
10        MR. HERRMANN: I am here, Your Honor.
11        THE COURT: Mr. Tucker?
12        (No response)
13        THE COURT: Mr. Tucker, are you there?
14        (No response)
15        THE COURT: We apparently keep losing Mr. Tucker.
16   Okay.
17        MR. TUCKER: Your Honor, I'm here. I'm sorry. I
18   had it on mute.
19        THE COURT: Oh, okay. All right. And we know Mr.
20   Leeson is still on. I assume, Mr. Leeson, you're on the
21   phone with Ms. Martin.
22        MR. LEESON: Yes, ma'am. And I have concluded my
23   argument.
24        THE COURT: All right. Mr. Leeson, in the full
25   payment to the plaintiff, the settlement payment to the

1   plaintiff, is that payment for 1,700 hours, then?
2              MR. LEESON:  Yes, ma'am.
3              THE COURT:  All right.
4              MR. HERRMANN:  It's actually 1,746 hours.
5              THE COURT:  All right.  All right, Mr. Herrmann, any
6   comments on behalf of Mr. Snider?
7              MR. HERRMANN:  Yeah.  Yeah, there's a few things I
8   would like to touch on.
9              One, the damages are statutory.  It's not so much as
10  what Mr. Snider's out-of-pocket losses are as what the
11  statute requires for a violation.  Restaurant setting, a
12  significant amount of money, paying their servers at the
13  reduced sub-minimum-wage rate of 2.13 as opposed to 7.25.  So
14  there there's a requirement that has to be followed.
15             Of course, there's an allegation -- in this case the
16  allegation is that the dishwasher nor the food runner were
17  properly included in the tip pool.  If either one of those
18  turns out to be correct, that the dishwasher nor the food
19  runner were allowed to participate in the tip pool, then the
20  damages that accrue from that are essentially the same, in
21  that it destroys the tip credit, so there's an extra $5.12
22  due for every hour worked at the server 2.13 an hour wage,
23  plus an amount of tips that were contributed unlawfully.
24             You know, there's questions about whether the food
25  runner was properly included or not.  You know, job titles

1  and actual job, day-to-day job performance, are different.
2  So while as a general matter a food runner is proper, if
3  they're performing other tasks in addition to running food,
4  then they may not be proper.
5       However, given that Mr. Snider appears to have been
6  paid the tip credit differential on hours where the tip
7  credit was not paid to him, I think that the damages are more
8  than sufficient to cover any other kind of damages that we
9  may not have discovered through the discovery process.
10      The other thing that Mr. Leeson mentioned was the no
11 confidentiality.  You know, if you read the cases that are
12 cited in our motion, that's one of the things that those
13 cases talk about, is that confidentiality should not be
14 included in FLSA agreements, which is why there's not one
15 included here.
16      The attorney's fees were separately negotiated.
17 Once we were able to calculate Mr. Snider's damages,
18 including the liquidated damages, that number did not change.
19      The plaintiff's demand actually increased from their
20 first demand to their second demand, actually increased by
21 $1,216, as a reflection of the increase in the amount of
22 attorney's fees that had been incurred.  And the second
23 demand was the one that defendant accepted.
24      THE COURT:  All right.
25      MR. HERRMANN:  The -- yeah, I guess that concludes

1    everything that I have to say.  And I would submit to you
2    that this is more than a reasonable settlement, in fact,
3    probably compensates Mr. Snider more than what he could have
4    gotten, even on his best day in court, net to him.
5              THE COURT:  Very well.  All right.
6              Anything else, Mr. Leeson?
7              MR. LEESON:  No, Your Honor.
8              THE COURT:  Okay, counsel.  The Court -- the Court
9    will approve the settlement of this case.  I will enter a
10   brief written order doing the same, dismissing the case as to
11   Mr. Snider with prejudice, and finding the collective action
12   dismissed as moot, and approving the settlement.  So -- but I
13   will do that in a written order.  And I will endeavor to do
14   that as soon as possible so you can finally resolve this
15   case.
16             I appreciate counsel's efforts in resolving this
17   matter and working together to do so.  I do find that this
18   settlement is, as Mr. Herrmann indicated, more than fair and
19   reasonable.  So I don't think there's any doubt about that.
20   So the Court will approve it, and I'll do that by written
21   order.
22             Is there anything else we need to take up today in
23   this case, counsel?
24             MR. LEESON:  Not from defendant, Your Honor.  Thank
25   you very much.

1       THE COURT: All right. Mr. Herrmann?

2       MR. HERRMANN: Not from plaintiff. Thank you.

3       THE COURT: All right. Well, as Mr. Herrmann
4  mentioned, you know, the provisions with regard to no
5  confidentiality, that's the reason we're having this hearing
6  on the record today. So I appreciate everyone's cooperation
7  in that, and I'm glad you could work together to successfully
8  resolve this.

9       MR. LEESON: Thank you, Your Honor.

10      THE COURT: Thank you, everybody, and -- yes, go
11 ahead.

12      MR. LEESON: I was just going to say, have a good
13 afternoon.

14      THE COURT: You too. Good afternoon, everyone.

15      MR. LEESON: All right. Bye.

16      MR. HERRMANN: Thank you, Your Honor.

17 (Proceedings adjourned, 1:27 p.m.)

18                        CERTIFICATE

19    I, JoRita B. Meyer, certify that the foregoing is a
20 correct transcript from the record of proceedings in
21 the above-entitled matter.

22 /s/ JoRita B. Meyer                        Date: 12/6/2018

23

24

25